Tompkins J.,
delivered the opinion of the Court.
In the month of October, 1822, Robert Simpson and Wilson P. Hunt filed their bill against John Mullanphy, Pasca] L. Cerre, -Holmes, Andrew Elliot, andThos. Hanly. In June, 1826, William Russell and the aforesaid complainants filed' a supplemental bill against the defendants in the original bill, except Hanly, who* had' died ; answers were filed and replications. In the Circuit Court a decree was¡nade for Simpson, and the bill was dismissed' as to Hunt and Russell. Mullanphy appeals to reverse the decree in favor of Simpson, and Russell appeals-to reverse his bill. These three *346 it is necessary to- notice,, as the case is now presented to this Court. Prom the evidence in the case, it appears that some time in the year 1817, Cerre sold; to Hanly a. square of ground in the-town of St. Louis, and that to secure payment, for it, Hanly mortgaged the same to Cerre; afterwards Hanly sold a part of said lot to Patrick M. Dillon. This part was taken off the south side of the said square, and was 35 feet front on Main street, and ran 150 feet east to the river, the width continuing the same. Afterwards, Dillon sold the part he had purchased to Rufus Easton. This partpurchased by Easton was divided by him into two parts, viz :.No. 1, fronting on Main street; and lot No. 2, on the river. These lots, being sold on execution-, against Easton, Simpson became the purchaser of lot No. 1. But Mullanphy had, previously purchased the same lot sold on another execution older than that under which Simpson had purchased ; but issued on a younger judgment. Hunt became the purchaser of lot No. 2, and conveyed it to Easton, who sold and conveyed lots No. 1 and 2 to Russell'. Hanly had also assigned to Mullanphy the mortgage Dillon had given to -him to secure the payment for the part of the square, sold by him to Dillon,,- and which had been divided into lots No. 1 and 2. On. the, petition of Cerre the whole square had been sold to satisfy the mortgage made to him by Hanly, and Mullanphy had become the purchaser, and Cerre had assigned to him the mortgage deed of Hanly. The object of the bill was to obtain leave for Simpson to redeem lot No.. 1, and for Russell to redeem both lots. The points arising are,
First. Whether the petitioners are barred by the order to sell, to satisfy the mortgage made to Cerre.
Second. Whether an equitable interest can be sold on execution, .and
Third. Whether Mullanphy, purchasing, under the elder execution and younger judgment, has a better right than Simpson. Cerre, Hanly being dead, caused his widow and infant children to be summonedand they not being found, the Court awarded an order of publication which was accordingly made. It is objected, that in conformity with the practice in chancery, Easton, Simpson and Russell ought to have been made defendants to the bill, and that guardians ad litem ought to have been appointed to the children, all of whom appear to have been minors. The statute in force when Cerre commenced this proceeding reads thus r Any person holding an instrument in writing purporting tobe a mortgage on lands and tenements shall be permitted to sue out a petition to the Circuit Court of the county where the mortgaged property lies, stating the instrument of writing containing tlie mortgage, and requiring the mortgagor, his heirs or representatives, to appear at the next succeeding Court, and show cause why the mortgaged property should not be foreclosed. and the property sold to pay the debt' due to the petitioner.” At common law, the consequence of failing to pay the money on the day appointed was, that the land, mortgaged was forfeited. Land being most commonly mortgaged to secure the payment of very inconsiderable sums of money, far below the value of the land, the Courts of Chancery early interposed to prevent so great an injustice.; and compelled the mortgagee to file his bill in equity, and to bring in all parties interested, as well the alienees of the mortgagor as the mortgagor himself, to show canse why the land should not be forfeited.
Our statute gives the mortgagee, on the failure of the mortgagor to pay, the right only to recover his debt, and damages. It is difficult to perceive with what justice then, even our legislature could impose on the petitioner the duty of giving notice to s.uch persons as might have found an interest in taking a subsequentmortgage on such. *347 land, of his intention to proceed to make his money; but it was urged, that if the land were sold for more than was necessary to pay the debt, due to the petitioner, the-surplus might be paid over to the mortgagor; this is very true, but it is equally true,, that it was the fault of the second mortgagpr to take his mortgage on property that had been before mortgaged.
And in such case, a court of equity can see no more reason why the petitioner should'be held to give notice to a subsequent mortgagee than a prior judgment creditor should give notice to a subsequent judgment creditor of his intention to sell; in either case, the surplus, if any, ought to be paid over to the owner of the land sold. The act of as.-embly requires that the petitioner cause to be summoned the mortgagor, his heirs, or representative. For the purpose of paying the debts of the deceased, the executor or administrator is the representative of the deceased, unless the creditor choose to proceed against the heir to whom land has descended. It does not appear that Hanly had either executor or administrator;,then it is not necessary to decide whether it was necessary for the petitioner to summon the one or the other of them. The subsequent mortgagees had sufficient constructive notice; there can be very little doubt but a court of equity would permit a subsequent mortgagee, or the alienee either of Hanly or Dillon, to come in and redeem, but as under our law, it is an act to be permitted for his own benefit only, and as the first mortgagee is in all events entitled only to his debt and damages, the alienee must come, and not wait to be called, as in the English courts of chancery, by the first'mortgagor. Easton, Hunt or Russell might have administered, or they might have caused guardians ad litem to be appointed for the minors, as easily as the petitioner could, and the statute did n'ot require him to do it. The reason why in the English courts, all persons, acquiring an interest in the mortgaged property subsequent to the making of the mortgage, should be summoned before loieclosure, not existing here, the rule ought not to be enforced here. It would be an act of injustice, even in the legislature, to make it his duty to do so, and accordingly that body.has, we think wisely, omitted to do so. We are decidedly of opinion that it was not the duty of the petitioner to summon' any one of those who had acquired an interest under Hanly, or under Dillon, the alienee of Hanly; this being our opinion, it becomes unnecessary to say any thing about the other points made in the cause. We are therefore of opinion, that the decree of the Circuit Comt dismissing the bill as to Russell ought to be affirmed ; and that its decree in S'mpsor.’s favor ought to be reversed, and this Court proceeding to make such order as the Circuit Court should have done, do order and decree that th® bill as to Simpson also bo dismissed and that as to Russell affirmed.